793 F.2d 376
 253 U.S.App.D.C. 305
 REGULAR COMMON CARRIER CONFERENCE, et al., Petitioners
v.
UNITED STATES of America and Interstate Commerce Commission,
Respondents.
REGULAR COMMON CARRIER CONFERENCE, et al., Petitioners
v.
UNITED STATES of America and Interstate Commerce Commission,
Respondents.
AMERICAN TRUCKING ASSOCIATIONS, INC., Petitioner
v.
UNITED STATES of America and Interstate Commerce Commission,
Respondents.
 Nos. 85-1146, 85-1147 and 85-1265.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued March 17, 1986.
Decided June 24, 1986.
 
 Petitions for Review of Orders of the Interstate Commerce commission.
 Kevin M. Williams, Arlington, Va., for Regular Common Carrier Conference, with whom Bryce Rea, Jr., Donald E. Cross and Leo C. Franey, Washington, D.C., for Central & Southern Motor Freight Tariff Associations, Inc., et al., John W. McFadden, Jr., and Elliott Bunce, Arlington, Va., for Eastern Central Motor Carriers Ass'n, Inc., and William S. Busker, Daniel R. Barney and Kenneth E. Siegel, Alexandria, Va., for American Trucking Associations, Inc., were on brief, for petitioners in Nos. 85-1146, 85-1147 and 85-1265.
 Timm L. Abendroth, Atty., I.C.C., with whom Robert S. Burk, Gen. Counsel, and John J. McCarthy, Jr., Deputy Associate Gen. Counsel, I.C.C., Washington, D.C., were on brief, for respondents in Nos. 85-1146, 85-1147 and 85-1265. Robert B. Nicholson and Robert J. Wiggers, Attys., U.S. Dept. of Justice, Washington, D.C., also entered appearances for respondent United States.
 Before GINSBURG, SCALIA and BUCKLEY, Circuit Judges.
 Opinion for the Court filed by Circuit Judge SCALIA.
 SCALIA, Circuit Judge:
 
 
 1
 The Regular Common Carrier Conference and other motor carrier trade associations seek review of two unpublished decisions of the Interstate Commerce Commission. They contend that the ICC acted without statutory authority in approving a tariff rule under which certain freight forwarders may agree to provide services to shippers at unpublished rates determined by averaging prior charges to those shippers.
 
 
 2
 * A "freight forwarder" is a transportation broker who assembles and consolidates numerous small shipments into one large load, arranges for long-haul transportation of the consolidated shipment, breaks the consolidated load into small individual shipments, and delivers those packages to the ultimate consignees. As carriers over which the ICC has jurisdiction, see 49 U.S.C.A. Sec. 10561(a) (West Supp.1986), freight forwarders are subject to the rate regulation of the Interstate Commerce Act, 49 U.S.C.A. Secs. 10701-10786. The Act contains, however, provision for ICC waiver of some of the rate regulation requirements. See 49 U.S.C.A. Sec. 10762(d)(1).
 
 
 3
 Application for such a waiver was filed with the Commission on February 28, 1984, by the Freight Forwarders Tariff Bureau, Inc. ("FFTB"), an organization of freight forwarders that acts as the tariff publishing agent for its members under a collective ratemaking agreement. FFTB sought Commission permission to publish the following rule in Tariff ICC FFT 116, a "governing rules tariff" which applies to most service offered by FFTB members:
 
 
 4
 1. To simplify rating and audit, Forwarder may, upon customer's request, provide an average rate based on the average characteristic rating and mileage of freight tendered by the customer. Such average rate will be used for all future rating and shall be updated as freight characteristic rating and mileage change.
 
 
 5
 2. Average rates will expire in 14 days if not accepted by the customer.
 
 
 6
 Because the rule does not provide that the "average rate" offered to the shipper will be published in any tariff, FFTB sought special permission to depart from, inter alia, 49 U.S.C.A. Sec. 10762(a)(2) & (c)(3) and 49 C.F.R. Sec. 1300.4(i) (1983).
 
 
 7
 On April 17, 1984, certain of the petitioners before us (who represent carriers that compete directly with FFTB members) filed a protest against the proposed rule, arguing that it violated several provisions of the Act that are not subject to waiver by the Commission. In its reply, FFTB agreed with most of the protest and conceded that the rule was "illegal," but argued that the Commission should nevertheless approve the application because a freight forwarder in competition with FFTB members had earlier published the same rule without seeking ICC approval and the agency had failed to act against it. The ICC (with Chairman Taylor and one other member dissenting) approved FFTB's special permission application. See Special Tariff Authority No. 84-04859--Average Rates, Application No. 3638 (decided Dec. 14, 1984). Shortly thereafter, FFTB filed the new rule with the Commission in Tariff ICC FFT 116. The Commission, by the same vote, accepted the tariff over the renewed protests of petitioners. See Freight Forwarder Tariff Bureau, Inc.--Average Rates, No. 39928 (decided Mar. 6, 1985). Petitioners now seek review under 28 U.S.C. Sec. 2342(5) (1982).
 
 II
 
 8
 We dismiss at the outset the Commission's claims that the actions under review are not final, that the controversy is not yet ripe for judicial resolution, and that petitioners lack standing to bring this challenge. As to finality: In approving the FFTB's special permission application and in approving the tariff containing the rule, the Commission has twice rejected petitioners' arguments on the merits. Thus, this case is quite different from Papago Tribal Utility Authority v. FERC, 628 F.2d 235 (D.C.Cir.), cert. denied, 449 U.S. 1061, 101 S.Ct. 784, 66 L.Ed.2d 604 (1980), and similar cases in which agencies accepted tariff filings for the very purpose of being able to consider objections to the filings. See ASARCO, Inc. v. FERC, 777 F.2d 764, 771-73 (D.C.Cir.1985). As to ripeness: The Commission argues that petitioners should be required to wait until they actually suspect an FFTB member of abusing the new rule, file a complaint, seek discovery, and then, depending on the results of discovery, ask the Commission for help. But the gravamen of petitioners' complaint is that any use of the rule is an abuse, precisely because it does not permit petitioners and others to know what rates are being offered. When the very basis of attack is the secrecy of rates and hence the inability to challenge them, it would be absurd to hold the controversy unripe because petitioners cannot identify instances where the secret rates have been unreasonable or discriminatory. There is no doubt, moreover, that the rule affects petitioners' primary conduct, see Air New Zealand Ltd. v. CAB, 726 F.2d 832, 835-36 (D.C.Cir.1984), since it renders them unable to match their competitors' unknown prices. The hardship petitioners now suffer from the "average rate" rule, and the fitness of the legal issues for judicial resolution, render this controversy ripe. See Abbott Laboratories v. Gardner, 387 U.S. 136, 148-49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). Finally, as to standing: The competitive injury just described constitutes injury in fact, and competitive injury is included within the zone of interests protected by the Interstate Commerce Act. See Central & Southern Motor Freight Tariff Ass'n v. United States, 757 F.2d 301, 312 (D.C.Cir.1985).
 
 
 9
 Turning to the merits of the matter, the waiver provision that was the basis for the Commission's action reads as follows:
 
 
 10
 The Commission may reduce the notice period of subsections (a) and (c) of this section if cause exists. The Commission may change the other requirements of this section if cause exists in particular instances or as they apply to special circumstances.
 
 
 11
 49 U.S.C.A. Sec. 10762(d)(1). The section to which this waiver provision applies is Sec. 10762, entitled "General tariff requirements," setting forth details concerning the contents, manner of filing, publication and alteration of common carrier tariffs. We agree with the dissenting commissioners that what the Commission has done here goes beyond "chang[ing] the ... requirements of this section," and nullifies other sections of the Act for which no waiver authority exists.
 
 
 12
 49 U.S.C.A. Sec. 10761(a) provides as follows:
 
 
 13
 Except as provided in this subtitle, a carrier providing transportation or service subject to the jurisdiction of the Interstate Commerce Commission ... shall provide that transportation or service only if the rate for the transportation or service is contained in a tariff that is in effect under this subchapter. That carrier may not charge or receive a different compensation for that transportation or service than the rate specified in the tariff whether by returning a part of that rate to a person, giving a person a privilege, allowing the use of a facility that affects the value of that transportation or service, or another device.
 
 
 14
 Even without any clear textual indication, it would be doubtful whether the waiver provision of Sec. 10762 could be used so expansively as to nullify this Sec. 10761 requirement for a "rate ... contained in a tariff." That requirement is utterly central to the Act. Without it, for example, it would be monumentally difficult to enforce the requirement that rates be reasonable and nondiscriminatory, see 49 U.S.C.A. Secs. 10701 & 10741(b), and virtually impossible for the public to assert its right to challenge the lawfulness of existing or proposed rates, see 49 U.S.C.A. Secs. 10708(a)(1) & 11701(a). The matter is placed beyond all doubt, however, by the fact that Sec. 10761 contains its own waiver provision, authorizing the Commission to "grant relief from subsection (a) of this section" only "to contract carriers." 49 U.S.C.A. Sec. 10761(b). That explicit limitation would be meaningless if the Commission could effectively dispense with the requirement for a "rate ... contained in a tariff" by unlimited dilution of the "general tariff requirements" under Sec. 10762.
 
 
 15
 The essential question before us, then, is whether the FFTB rule produces a "filed rate." We think Chairman Taylor's dissent answered that correctly:What we have here ... is not a tariff rule that sets forth a rate, but rather a rule that simply announces a pricing policy. Essentially, the rule contains nothing more than an offer to negotiate and agree with shippers upon an "average rate." Clearly, the agreed upon rate will neither be published in nor readily ascertainable from any tariff on file with the Commission ....
 
 
 16
 [T]he proffered rule has been cleverly crafted to permit the forwarder unfettered discretion to secretly propose whatever "average rate" it wishes.... [T]he filing is ... patently unlawful....
 
 
 17
 The ICC argues that under many other tariff structures and rules approved by the Commission (but apparently not yet by the courts) the per-unit rate charged to a particular shipper does not appear on the face of the tariff. For example, under volume-discount rules competing carriers cannot determine the per-unit rate the carrier is charging without knowing the volume tendered by the shipper. But they do, at least, know how the per-unit rate is determined, enabling them to protest the application of a different formula to a particular shipper (and also enabling them to match the offer). Moreover, under the volume-discount rules the shipper himself is able to compute the precise per-unit rate to which he is entitled. Under the FFTB "averaging" rule, by contrast, the carrier's competitors do not even know how the "averaging" is conducted, and the shipper does not know whether it is conducted in the same fashion for him as it is for other shippers. For example, is the "average characteristic rating and mileage of freight tendered by the customer" to be computed on the basis of nationwide shipments or only shipments to a particular destination? (The rule does not say. In his letter to the Commission making the waiver application, FFTB's General Manager asserted that the average would be computed on the basis of shipments "to a given area"--a disposition which, even if it were mandated, would be unacceptably vague.) For what period is the average to be computed--the past week, or month or year? (Again the rule does not say. FFTB's General Manager contemplated nothing more specific than an average "for a past month" (emphasis added).) And how frequent shall be the "updat[ing] as freight characteristic rating and mileage change"? We have no hesitation in holding that this unspecified "averaging" does not meet the requirement of Sec. 10761(a) for a "rate ... contained in a tariff," and therefore cannot be permitted under the waiver provision of Sec. 10762. Cf. Electrical District No. 1 v. FERC, 774 F.2d 490 (D.C.Cir.1985).
 
 
 18
 * * *
 
 
 19
 * * *
 
 
 20
 Because the Commission's actions were contrary to law, 5 U.S.C. Sec. 706(2)(A) (1982), the petitions for review are granted. The Commission's approval of Application No. 3638 and acceptance of Tariff ICC FFT 116 are set aside and remanded for further action consistent with this opinion.
 
 
 21
 So ordered.