978 F.2d 727
 298 U.S.App.D.C. 230, 137 P.U.R.4th 444
 AMERICAN TELEPHONE AND TELEGRAPH COMPANY, Petitioner,
v.
FEDERAL COMMUNICATIONS COMMISSION and United States of
America, Respondents.
US Sprint Communications Company, US West Communications,
Inc., Ameritech Operating Companies, MCI Telecommunications
Corporation, International Business Machines Corporation, Ad
Hoc Telecommunications Users Committee, Intervenors.
 No. 92-1053.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Sept. 22, 1992.
Decided Nov. 13, 1992.
Rehearing and Rehearing En Banc
Denied Jan. 21, 1993.
 
 [298 U.S.App.D.C. 231] Petition for Review of an Order of the Federal Communications Commission.
 David W. Carpenter, Chicago, Ill., with whom Peter D. Keisler, Washington, D.C., Francine J. Berry, and Mark C. Rosenblum, Basking Ridge, N.J., were on the brief, for petitioner.
 John E. Ingle, Deputy Associate Gen. Counsel, F.C.C., with whom Robert L. Pettit, Gen. Counsel, F.C.C., Laurence N. Bourne, Counsel, F.C.C., Catherine G. O'Sullivan and Robert J. Wiggers, Attys., Dept. of Justice, Washington, D.C., were on the brief, for respondents.
 
 
 1
 Frank W. Krogh, Donald J. Elardo, Loretta J. Garcia, and Richard M. Singer, Washington, D.C., were on the brief, for intervenor MCI Telecommunications Corp.
 
 
 2
 James S. Blaszak and Patrick J. Whittle, Washington, D.C., were on the brief, for intervenor Ad Hoc Telecommunications Users Committee.
 
 
 3
 Leon M. Kestenbaum, H. Richard Juhnke, and Michael B. Fingerhut, Washington, D.C., entered appearances, for intervenor US Sprint Communications Co.
 
 
 4
 Robert B. McKenna, Denver, Colo., and Lawrence E. Sarjeant, Washington, D.C., entered appearances, for intervenor US WEST Communications, Inc.
 
 
 5
 [298 U.S.App.D.C. 232] Alfred Winchell Whittaker, Washington, D.C., and Floyd S. Keene, Hoffman Estates, Ill., entered appearances, for intervenor Ameritech Operating Companies.
 
 
 6
 J. Roger Wollenberg, William T. Lake and Jonathan Jacob Nadler, Washington, D.C., entered appearances, for intervenor Intern. Business Machines Corp.
 
 
 7
 Before: WALD, SILBERMAN, and SENTELLE, Circuit Judges.
 
 
 8
 Opinion for the Court filed by Circuit Judge SILBERMAN.
 
 
 9
 SILBERMAN, Circuit Judge.
 
 
 10
 AT & T petitions for review of an order of the Federal Communications Commission that concluded an investigation into a complaint filed by AT & T in 1989. The complaint alleged that MCI had violated and was continuing to violate section 203 of the Communications Act, 47 U.S.C. § 203 (1988), by charging some customers rates that were not filed with the FCC. The Commission denied AT & T's complaint in part and dismissed it in part without determining whether MCI had violated the Act and ostensibly without addressing the validity of the Commission's Fourth Report and Order, 95 F.C.C.2d 554 (1983), on which MCI had relied to justify its actions. The FCC said that it would postpone reconsideration of the validity of the Report to a rulemaking that it announced at the same time it denied AT & T relief. We hold that it was arbitrary and capricious for the agency to dismiss AT & T's complaint for immediate relief without deciding the question of law it presented. Moreover, we think that in dismissing the complaint the FCC necessarily, if implicitly, assumed the validity of the Fourth Report as a substantive rule. And under our precedent the rule is plainly contrary to section 203. We remand to the Commission for it to reconsider the appropriate relief it should grant AT & T.
 
 I.
 
 11
 Section 203(a) of the Communications Act, 47 U.S.C. § 203(a) (1988), requires that every communications common carrier file its rates with the FCC.[1] AT & T's dispute with MCI and the FCC involves "permissive detariffing," a term used to refer to the FCC's decision to forbear from enforcing the rate filing requirements of section 203 against carriers, including MCI, that the FCC determined to be nondominant in the inter-exchange market (presumably AT & T remains the only "dominant" carrier in the FCC's view).[2] Permissive detariffing's genesis is found in the Competitive Carrier proceeding the FCC initiated in 1979 to determine methods for reducing the regulatory burdens on communications common carriers. See Policy and Rules Concerning Rates for Competitive Common Carrier Services and Facilities Authorizations Therefor, Notice of Inquiry and Proposed Rulemaking, 77 F.C.C.2d 308 (1979). In 1982 in its Second Report and Order, the Commission decided that it would forbear from enforcing section 203(a)'s filing requirements against nondominant resale carriers. See Second Report and Order, 91 F.C.C.2d 59, 71 (1982). And in its 1983 Fourth Report and Order, the Commission extended the policy of forbearance (in other words, permissive detariffing treatment) to "specialized carriers" such as MCI. See Fourth Report and Order, 95 F.C.C.2d 554, 578 (1983).
 
 
 12
 The Commission, however, went beyond mere forbearance in 1985 in its Sixth Report and Order, 99 F.C.C.2d 1020 (1985), by making detariffing mandatory and by telling non-dominant carriers that it would [298 U.S.App.D.C. 233] no longer even accept their rate filings under section 203. For reasons not apparent, MCI, an apparent beneficiary of the Sixth Report, challenged that order in this court on the grounds that the FCC had no authority to eliminate a requirement of the Communications Act. See MCI Telecommunications Corp. v. FCC, 765 F.2d 1186 (D.C.Cir.1985) ("MCI v. FCC "). We vacated the Sixth Report after concluding that it exceeded the Commission's statutory authority. We explicitly did not decide the validity of the earlier Fourth Report and Order, but our decision not to do so was predicated on the assumption that the Fourth Report was (at least arguably) immune from review under Heckler v. Chaney, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), as an exercise of enforcement discretion. See MCI v. FCC, 765 F.2d at 1190 n. 4.
 
 
 13
 The Commission, in subsequent litigation, did not help to clarify the nature of the Fourth Report. In 1985 the FCC argued that the Fourth Report could be "fairly characterized" as an exercise of the agency's enforcement discretion and that it was thus immune from review. Respondent's Brief at 27, MCI Telecommunications Corp. v. FCC, 799 F.2d 773 (D.C.Cir.1984) (Memorandum Order). In the same brief, however, the Commission referred to the Second and Fourth Reports as rules designed to "exempt" some carriers from the filing requirements of the Act. Id. at 29.
 
 
 14
 In August 1989, with the FCC's characterization of the Fourth Report apparently still uncertain, AT & T filed a complaint against MCI under section 208 of the Communications Act. Section 208 allows any person injured by a violation of the Act to file a complaint with the Commission, see 47 U.S.C. § 208(a) (1988),[3] and requires the Commission to investigate the complaint and issue an order concluding the inquiry within 12 to 15 months. See id. § 208(b). AT & T claimed that since 1987, MCI had been violating, and continued to violate, section 203(a) by charging certain customers special negotiated rates that it had not filed with the FCC. AT & T sought both damages and a cease and desist order. According to AT & T, MCI's actions injured AT & T by putting AT & T at a competitive disadvantage. While AT & T had to file all of its rates with the Commission, MCI did not, thus not only making it more difficult for AT & T to match MCI's rates, cf. Regular Common Carrier Conference v. United States, 793 F.2d 376, 379 (D.C.Cir.1986), but also enabling MCI and other competitors to entangle AT & T in burdensome proceedings before the Commission by filing oppositions to the rates AT & T filed.
 
 
 15
 MCI, in response, did not deny AT & T's factual allegations. It relied on the Fourth Report. According to MCI, the Fourth Report was a substantive rule that removed the nondominant carriers' obligation to file all of their rates under section 203(a). AT & T contended, in accordance with our tentative understanding, that the Fourth Report had been merely a statement of the FCC's enforcement policy and therefore MCI still had an independent obligation imposed by statute to file all of its rates. If the Fourth Report were a substantive rule that purported to remove obligations imposed by the statute, AT & T [298 U.S.App.D.C. 234] argued, it was invalid under our MCI v. FCC opinion because it exceeded the FCC's statutory authority.
 
 
 16
 Despite section 208's requirement that the Commission issue an order concluding its investigation into a complaint within 12 months, see 47 U.S.C. § 208(b)(1), AT & T's complaint went unresolved for a good deal longer. The FCC first determined that the complaint raised a broad issue of policy and should be transferred to its policy division. Thereafter, a decision on the complaint was further postponed pending the conclusion of the Commission's rulemaking on Competition in the Interstate Interexchange Marketplace. See Report and Order, 6 F.C.C.Rcd. 5880 (1991). Finally, in October 1991, 25 months after the complaint had been filed, AT & T petitioned this court for a writ of mandamus ordering the Commission to issue a cease and desist order against MCI. We dismissed the petition in January 1992 when the FCC announced that it would issue an order concluding its investigation by January 30, 1992.
 
 
 17
 On January 28, 1992, the FCC concluded its inquiry but nevertheless declined to decide forthrightly the issue before it. See AT & T Communications v. MCI Telecommunications Corp., 7 F.C.C.Rcd. 807 (1992). Although the Commission, dispelling prior confusion, determined conclusively that the Fourth Report and Order was a substantive rule upon which MCI had properly relied, see id. at 809, it purported not to consider whether the Fourth Report, so interpreted, was valid under the Communications Act. Instead, the Commission said the Fourth Report's "validity" would be better considered in a rulemaking that would afford all interested parties an opportunity to comment. Id. And the Commission announced such a rulemaking on the same day it issued the order concluding the investigation. See Tariff Filing Requirements for Interstate Common Carriers, Notice of Proposed Rulemaking, 7 F.C.C.Rcd. 804 (1992). The Commission thus asserts that it dismissed AT & T's claim for a cease and desist order without ever determining whether MCI was violating the Communications Act. Nevertheless, the Commission rejected AT & T's claim for damages because it determined that MCI was entitled to rely on the Fourth Report as a substantive rule that removed MCI's obligation to file all its rates. AT & T Communications v. MCI Telecommunications Corp., 7 F.C.C.Rcd. at 809. The FCC reasoned that even if the rule were declared invalid under the Communications Act, the consequence of that invalidity (whatever it may be) should not apply retroactively to MCI's past conduct. Id.
 
 II.
 A.
 
 18
 It is rather apparent that, because the Commission fears the Fourth Report cannot withstand judicial scrutiny (at least in our court), it wants to avoid judicial review of the rule. This will allow the Fourth Report to continue to govern the conduct of carriers for as long as possible. The Commission relies on SEC v. Chenery Corp., 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), for the general proposition that "the choice made between proceeding by general rule or by individual, ad hoc litigation is one that lies primarily in the informed discretion of the administrative agency." Id. at 203, 67 S.Ct. at 1580 (citation omitted). This maxim of administrative law permits an agency to develop a body of regulatory law and policy either through case-by-case decisionmaking (a quasi-adjudicative process) or through rulemaking (a quasi-legislative process). The Commission claims that it merely exercised a choice between these methods by dismissing AT & T's complaint without ruling on the merits,[4] and that it then put on its quasi-legislative hat to reconsider the Report in a new rulemaking. The difficulty with the Commission's approach--a sort of [298 U.S.App.D.C. 235] administrative law shell game--is that it is a logical non sequitur to AT & T's complaint. AT & T's complaint asserts that MCI is acting illegally under present law, that MCI has violated the law in the past, and that AT & T is and has been injured by MCI's behavior. AT & T did not, as it can do under the Administrative Procedure Act (APA), request a new rulemaking. See 5 U.S.C. § 553(e). When presented with AT & T's complaint, the Commission had an obligation to answer the questions it raised and to decide whether MCI had violated the statute.
 
 
 19
 The agency's responsibilities as an adjudicator are especially clear under the Communications Act. Sections 206-208 of the Act give AT & T the right to press a claim for damages suffered due to violation of the Act either in federal court or before the Commission. See 47 U.S.C. §§ 206-208. The statute thus expressly sets up the Commission as an adjudicator of private rights.[5] The question before the Commission as the adjudicator was whether or not MCI had been, and currently was, violating the law. If it was, at a minimum (putting aside the question of whether AT & T has a right to damages) AT & T was entitled to a cease and desist order at that point. The FCC's proposal to consider the general problem AT & T raises in a future rulemaking--a process designed to consider whether to issue new normative standards--is, when one thinks hard about it, a non-response to the complaint. It is similar to a judge dismissing a complaint based on a federal statute because he has been informed that Congress is conducting hearings on whether to change the statute. Like the judge, the agency has an obligation to decide the complaint under the law currently applicable. Cf. Meredith Corp. v. FCC, 809 F.2d 863, 874 (D.C.Cir.1987), cert. denied, 493 U.S. 1019, 110 S.Ct. 717, 107 L.Ed.2d 737 (1990).
 
 
 20
 Agencies do have a fundamental choice whether to interpret and apply federal statutes through adjudication or through rulemaking. But they cannot avoid their responsibilities in an adjudication properly before them by looking to a rulemaking, which operates only prospectively. See Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988). The choice an agency has between different methods of "making law" is simply irrelevant when the agency is called upon as an adjudicator to apply existing law to a complaint. Here, as in Meredith, the Commission "confuses its quasi-judicial role with its quasi-legislative one." Meredith, 809 F.2d at 873.
 
 
 21
 The Commission claims that a two-party adjudication would not have been suitable to consider the validity of the Fourth Report because so many carriers in the industry have an interest in the question. We do not think the FCC had any alternative but to confront the issue. However, it easily could have solicited the views of other carriers. The FCC was quite free to invite them to intervene or file briefs as non-parties. See General Amer. Transp. Corp. v. ICC, 883 F.2d 1029, 1030 (D.C.Cir.1989) (Silberman, J., concurring in denial of rehearing). Indeed, nothing stopped the FCC from initiating a companion rulemaking when AT & T filed its complaint--as long as the Commission concluded its inquiry into AT & T's complaint within the 12 to 15 month period required by section 208 of the Act. Nor are we impressed with the FCC's argument that section 208 authorized the Commission's action by giving the agency authority to investigate complaints "in such manner and by such means as it shall deem proper." 47 U.S.C. § 208(a). A future rulemaking that will consider modifying the Fourth Report is in no sense an investigation of AT & T's complaint. It could not possibly be, because a rulemaking can affect the conduct of parties only prospectively; it does not determine the legality of past conduct. AT & T, it must be understood, challenged MCI's past and present actions. A cease and desist order, [298 U.S.App.D.C. 236] to be sure, can be thought to provide prospective relief, but it must be based on the premise that existing law has been violated.
 
 
 22
 The Commission's more interesting argument is that it could not "consider" AT & T's challenge to the legality of the Fourth Report because it could not disregard its own rule in an adjudication. See American Fed'n of Gov't Employees v. FLRA, 777 F.2d 751 (D.C.Cir.1985). We have never held, however, that an agency is obliged to apply a rule in an adjudicatory context if intervening events indicate that the rule is unlawful. Our opinion in Meredith points in the other direction. There we concluded that the FCC was obliged to entertain petitioner's claim that the FCC's Fairness Doctrine was unconstitutional, whether or not the FCC changed its policy in a new rulemaking. See Meredith, 809 F.2d at 873-74. Similarly, then Judge Scalia, concurring in American Federation of Government Employees, recognized that in some situations, when an agency declines to apply its own rule in an adjudication "we would be justified [on appeal] in looking beyond the defect of inconsistency, to affirm an adjudication on the ground that its result was mandated by statute and that the conflicting rule was simply unlawful." American Fed'n of Gov't Employees, 777 F.2d at 760 (Scalia, J., concurring). Judge Scalia's concern for situations only dimly perceived in that case seems very much on the mark, for otherwise an agency would be required to apply a rule in an adjudication until it had revoked the rule in a new rulemaking, even if the Supreme Court had invalidated the interpretation upon which the rule was based.
 
 
 23
 In any event, the Commission's stated concern seems to us to be a red herring. If the agency believed its rule was invalid and did not want to so hold in an adjudication, as we mentioned above, it immediately could have started a companion rulemaking to repeal the rule. The agency's own lawyers could have determined the rule was inconsistent with the statute and a Notice of Proposed Rulemaking would then have so stated.[6] The rule then simply could have been revoked and perhaps a new rule could have been adopted. But surely the agency was not required to apply the invalid rule in the meantime.
 
 
 24
 Typically, of course, when an agency's rule is challenged in an adjudication as inconsistent with the agency's authorizing statute, the agency rejects the challenge on the merits and the supposed concerns the FCC expresses here are never voiced. The agency applies its rule because it believes the rule is lawful, and the agency is prepared to stand by it forthrightly in a subsequent appeal. The FCC's unusual position here is plainly engendered by a desire to keep the rule in effect as long as possible despite serious doubts that the rule could not withstand judicial review. The Commission thought to achieve this goal by dismissing the complaint, thereby maintaining the legal regime created by the rule. Yet, it sought to do so without squarely relying on the rule to justify the dismissal. In that way, the Commission hoped to avoid judicial review. We have little difficulty in concluding that it was arbitrary and capricious for the Commission to dismiss AT & T's complaint with only a promise to address the legal issue it raised in a future rulemaking. To the extent that the Commission thought it had discretion to postpone decision to a rulemaking, it misunderstood its role as an adjudicator.
 
 B.
 
 25
 The Commission, not surprisingly in light of its obvious strategy, insists that even if we conclude, as we do, that the agency's dismissal of AT & T's complaint violated the law, we should not reach the validity of the Fourth Report. According to the Commission, the order below did not apply the Fourth Report or consider its validity and, indeed, did not even determine the lawfulness of MCI's conduct. Thus, we are told we must remand the case to the agency, so that the Commission can determine the validity of the rule in the adjudication.
 
 
 26
 [298 U.S.App.D.C. 237] We are quite aware that to accept the Commission's argument would be to allow the FCC's troubling tactics largely to succeed. The FCC, it will be recalled, did not decide AT & T's complaint within the statutory time period. It was only after AT & T brought a mandamus petition before us 25 months after the complaint had been filed that the FCC agreed to issue its decision. To remand the case now for the FCC to "consider" the validity of the Fourth Report would simply permit the FCC to delay the process further. Moreover, a remand seems especially unnecessary in light of our prior opinion in MCI Telecommunications Corp. v. FCC, 765 F.2d 1186 (D.C.Cir.1985), which, as we discuss below, virtually settles the issue in this court.
 
 
 27
 Still, we need not rely on these factors to conclude that the Fourth Report is properly before us. It is well established that a rule may be reviewed when it is applied in an adjudication--an agency need not explicitly reassess the validity of a rule to subject the rule to challenge on review. See NLRB Union v. FLRA, 834 F.2d 191, 195 (D.C.Cir.1987); Functional Music, Inc. v. FCC, 274 F.2d 543, 546 (D.C.Cir.1958), cert. denied, 361 U.S. 813, 80 S.Ct. 50, 4 L.Ed.2d 60 (1959).[7] Despite the Commission's protestations to the contrary, we think the Commission necessarily relied on the Fourth Report in its decision to dismiss AT & T's complaint.
 
 
 28
 The Report, and the Commission's desire to protect it, clearly provided the underlying rationale for the order under review. The Commission explicitly justified its decision to dismiss on the grounds that the complaint challenged "the Commission's previously adopted and effective forbearance rule." AT & T Communications v. MCI Telecommunications Corp., 7 F.C.C.Rcd. 807, 809 (1992). And, in denying AT & T retrospective relief, the Commission relied on its conclusion that the Fourth Report was a substantive rule that removed the obligation of carriers to file tariffs. Id. The FCC's only reason for clarifying its view of the Report was to provide MCI and other carriers with a regulatory sanction for their behavior. As the Commission concluded: "It would be manifestly unfair to entertain AT & T's claim that MCI's alleged past conduct, which the Commission explicitly approved in advance, may give rise to a finding of liability." Id. (emphasis added).
 
 
 29
 Whatever tortured language the Commission used to describe its actions,[8] the decision to dismiss AT & T's complaint necessarily must have rested on the Fourth Report and placed an implicit imprimatur on the Fourth Report 's interpretation of the statute. The notion the FCC advances before us--that it did not apply the Report and did not determine whether or not MCI had violated the statute--suggests that its order merely left the parties in legal limbo. But the Commission ignores the practical effect of its order. In dismissing the complaint, the Commission rejected AT & T's request for relief and definitively sanctioned MCI's conduct. There is no conceivable basis for the agency's [298 U.S.App.D.C. 238] action other than a temporary reliance on the Fourth Report's interpretation of the statute as a valid statement of the law, at least for the interim period between the time of the dismissal and the conclusion of the new rulemaking. Notwithstanding its claims for discretion to proceed either by rulemaking or by adjudication, the Commission does not, and could not, claim that pending a new rulemaking it has authority to decide complaints contrary to the law. Once the Commission's necessary reasoning is recognized, the Commission's sophistic claim that it did not apply the Report or pass on its validity evaporates.
 
 
 30
 Finally, we see no need to remand to obtain an agency interpretation of the statute.[9] The Commission, of course, set forth its statutory construction when it promulgated the rule. When a rule is challenged in its application, courts typically examine the validity of the rule on the basis of the reasoning offered when the rule was originally promulgated. See, e.g., National Ass'n of Greeting Card Publishers v. United States Postal Serv., 607 F.2d 392, 425 n. 59 (D.C.Cir.1979), cert. denied, 444 U.S. 1025, 100 S.Ct. 688, 62 L.Ed.2d 659 (1980); Network Project v. FCC, 511 F.2d 786, 789 n. 1 (D.C.Cir.1975). And, in any event, the agency has already fully defended (unsuccessfully) in MCI v. FCC the very statutory interpretation that underpins the Fourth Report. Accordingly, we pass on to the merits.
 
 III.
 
 31
 It is unnecessary to consider any more whether the Fourth Report is merely an enforcement policy. The Commission has determined unequivocally that it is a substantive rule[10] designed to affect not only the FCC's enforcement policies, but also the relationships and rights of the "dominant" carrier, AT & T, and all other carriers. As a substantive rule, the Fourth Report is simply not defensible in this court. Its validity hinges on the interpretation of section 203 of the Communications Act. Section 203(a) states that "every" carrier "shall" file its tariffs with the Commission. 47 U.S.C. § 203(a). We said in MCI Telecommunications Corp. v. FCC, 765 F.2d 1186 (D.C.Cir.1985), " 'Shall ... is the language of command.' " Id. at 1191 (quoting Escoe v. Zerbst, 295 U.S. 490, 493, 55 S.Ct. 818, 819, 79 L.Ed. 1566 (1935)). The Commission points out (as it did in MCI ) that section 203(b) allows the Commission to "modify any requirement" of the section "in particular instances or by general order applicable to special circumstances or conditions." 47 U.S.C. § 203(b)(2). According to the FCC, that language allows the Commission to remove the filing obligation from certain carriers as long as it continues to enforce the substantive requirements of sections 201 and 202--namely that rates be just, reasonable, and nondiscriminatory. See 47 U.S.C. §§ 201-202. Although the argument was not insubstantial when made initially, we concluded that the language of the statute was not susceptible to the Commission's reading.[11]
 
 
 32
 In MCI Telecommunications Corp. v. FCC, 765 F.2d 1186 (D.C.Cir.1985), as noted above, we concluded that section 203(b) could not be interpreted to permit the Commission's attempt to require nondominant carriers to stop filing tariffs under section 203(a). We struck down the mandatory detariffing rule contained in the Commission's Sixth Report and Order. See MCI, 765 F.2d at 1195-96. To be sure, we explicitly reserved holding on the permissive detariffing scheme of the Fourth Report, but only because we believed the Report "arguably immune from judicial review" as a [298 U.S.App.D.C. 239] simple statement of enforcement policy. Id. at 1190 n. 4. Our reasoning in MCI forecloses the Commission's argument in this case. We said in MCI that the language of section 203(b) "suggest[s] circumscribed alterations--not, as the FCC now would have it, wholesale abandonment or elimination of a requirement." Id. at 1192. To "modify," we thought, suggests to "alter; to change in incidental or subordinate features." Id. (quoting BLACK'S LAW DICTIONARY 905 (5th ed. 1979)). Whether detariffing is made mandatory, as in the Sixth Report, or simply permissive, as in the Fourth Report, carriers are, in either event, relieved of the obligation to file tariffs under section 203(a). That step exceeds the limited authority granted the Commission in section 203(b) to "modify" requirements of the Act.[12]
 
 
 33
 * * * * * *
 
 
 34
 We understand fully why the Commission wants the flexibility to apply the tariff provisions of the Communications Act to AT & T, which the Commission regards as the dominant carrier, differently from the way it applies the tariff provision to other competing carriers. We do not quarrel with the Commission's policy objectives. But the statute, as we have interpreted it, is not open to the Commission's construction. The Commission will have to obtain congressional sanction for its desired policy course.
 
 IV.
 
 35
 There remains AT & T's claim for damages. The Commission, as part of its strategy to avoid judicial review of the Fourth Report, disposed of this claim by concluding that, assuming, arguendo, the Fourth Report was contrary to law, AT & T would still not be entitled to damages because any such determination of law should not be applied "retroactively." In other words, MCI was entitled to rely on the Commission's interpretation of the statute embodied in the Fourth Report. The Commission applied the five factor test we have used to determine whether new law developed by an agency in adjudication should be applied retroactively, see Retail, Wholesale & Dep't Store Union v. NLRB, 466 F.2d 380, 390 (D.C.Cir.1972); see also Clark-Cowlitz Joint Operating Agency v. FERC, 826 F.2d 1074, 1081 (D.C.Cir.1987), cert. denied, 485 U.S. 913, 108 S.Ct. 1088, 99 L.Ed.2d 247 (1988), and decided the answer to the hypothetical question in this case was no. AT & T claims that, in light of our MCI decision, an explicit Commission recognition that its Fourth Report is ultra vires is no real change in the law.
 
 
 36
 We do not think it appropriate to resolve this dispute and apply the five factor test [298 U.S.App.D.C. 240] at this stage because we do not fully understand what the Commission sees as "the law" to be applied retroactively. By implication, the Commission must be referring to a prospective change in its regulation, but we think it is analytically incoherent to consider whether that change should be applied retroactively until it is fashioned. If the Commission means, instead, only its acceptance of our MCI interpretation, it would have to explain why that is a change in the law. The Commission may be relying on its right to refuse to acquiesce in one (or more) court of appeals' interpretation of its statute, but, then, how does it explain the interrelationship between a party's possible cause of action in the district court and one before the Commission? Would parties be entitled to damages in the United States District Court for the District of Columbia (particularly in light of our MCI opinion), but not before the Commission?
 
 
 37
 * * * * * *
 
 
 38
 We remand the case to the Commission, having vacated the Fourth Report as contrary to the Communications Act, with instructions to reconsider AT & T's claim for relief. It would appear that AT & T is entitled promptly to a cease and desist order against MCI. We do not direct the Commission to provide specific relief, however, partly out of a reluctance to direct an agency as to the exact remedy to be employed and partly because of our expectation that the practices sanctioned by the Fourth Report will cease since carriers who do not file tariffs will be subject to damage suits in our district court. The Commission will also have to reconsider AT & T's damages claim. If the Commission continues to believe that retroactivity is an obstacle to recovery of damages, it must explain what it understands to be the applicable law and why that law constitutes a change that implicates retroactivity concerns.
 
 
 39
 It is so ordered.
 
 
 
 [1]
 47 U.S.C. § 203(a) states: "Every common carrier, except connecting carriers, shall, within such reasonable time as the Commission shall designate, file with the Commission and print and keep open for public inspection schedules showing all charges for itself and its connecting carriers for interstate ... communication...."
 47 U.S.C. § 203(b)(2) states:
 The Commission may, in its discretion and for good cause shown, modify any requirement made by or under the authority of this section either in particular instances or by general order applicable to special circumstances or conditions....
 
 
 [2]
 In its First Report and Order, 85 F.C.C.2d 1 (1980), the Commission determined that among interexchange telephone carriers, only AT & T exerted market power and was thus dominant. See id. at 22-24, 27-30
 
 
 [3]
 47 U.S.C. § 208(a) states:
 Any person, any body politic or municipal organization, or State Commission, complaining of anything done or omitted to be done by any common carrier subject to this chapter, in contravention of the provisions thereof, may apply to said Commission by petition which shall briefly state the facts, whereupon a statement of the complaint thus made shall be forwarded by the Commission to such common carrier, who shall be called upon to satisfy the complaint or to answer the same in writing within a reasonable time to be specified by the Commission.... If ... there shall appear to be any reasonable ground for investigating said complaint, it shall be the duty of the Commission to investigate the matters complained of in such manner and by such means as it shall deem proper.
 47 U.S.C. § 206 states:
 In case any common carrier shall do, or cause or permit to be done, any act, matter, or thing in this chapter prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this chapter required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequences of any such violation of the provisions of this chapter....
 
 
 [4]
 Whether it was possible analytically for the FCC to dismiss AT & T's complaint without implicitly ruling on the claim is another question. As we discuss below in Part III, we think that by dismissing the complaint the Commission necessarily sanctioned MCI's conduct under the statute
 
 
 [5]
 Presumably, AT & T chose to bring its case before the Commission because AT & T is primarily interested in a cease and desist order. The statute does not explicitly grant the district court power to issue such an order, but the parties and intervenors all assume that the Commission could grant such relief
 
 
 [6]
 Here, of course, the agency also had the benefit of the parties' briefs
 
 
 [7]
 A simple citation to these cases also suffices to dispense with the FCC's claim that AT & T's challenge to the Fourth Report was not timely because it was not filed when the Report was first issued. The FCC's argument that the complaint was not timely seems particularly meritless in this case because it was not until the FCC issued the very order under review here that it was clear that the Fourth Report was a substantive rule that altered carriers' obligations under the statute. In any event, the contention that AT & T's challenge was not timely, or, as the Commission now argues, that it is barred by the doctrine of laches, cannot justify the Commission's decision since neither reason was cited by the Commission in its original order. See SEC v. Chenery Corp., 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943)
 
 
 [8]
 The Commission claimed that it could dispose of AT & T's claim for "prospective relief" (a cease and desist order) because, although "nominally stated in terms of a request for relief against MCI, [it] is in practical effect a challenge to the Commission's previously adopted and effective forbearance rule." See AT & T Communications v. MCI Telecommunications Corp., 7 F.C.C.Rcd. 807, 809 (1992). That is, of course, true, but it hardly justifies the Commission's ostensible refusal to consider the validity of the rule. Whether the relief to be considered is damages or a cease and desist order, the question before the Commission is whether MCI has been and is violating the law
 
 
 [9]
 We would normally be obliged to follow this course if the statutory language were ambiguous
 
 
 [10]
 The language of the Fourth Report amply justifies the Commission's reading. The Fourth Report begins by proposing "to remove ... regulatory requirements for non-dominant carriers," Fourth Report and Order, 95 F.C.C.2d 554, 555 (1983), and concludes by giving carriers, subject to the order, "permission to cancel their tariffs on file with this Commission," id. at 582
 
 
 [11]
 Our opinion, although it does not cite Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), postdates that case
 
 
 [12]
 As we discussed in MCI, the Second Circuit's interpretation of section 203(b) is similarly restricted. See id. at 1192 (citing American Tel. & Tel. Co. v. FCC, 572 F.2d 17 (2d Cir.), cert. denied, 439 U.S. 875, 99 S.Ct. 213, 58 L.Ed.2d 190 (1978); and American Tel. & Tel. Co. v. FCC, 487 F.2d 865 (2d Cir.1973))
 As AT & T points out, our opinion in MCI is somewhat buttressed by the more recent Supreme Court case, Maislin Industries, U.S. v. Primary Steel, Inc., 497 U.S. 116, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990). There, the Court rejected the ICC's "deregulatory" interpretation of the quite similar rate-filing provisions of the Interstate Commerce Act, 49 U.S.C. §§ 10761-10762 (1988), which share a common ancestor with the Communications Act, the original Interstate Commerce Act. Due to this shared lineage, an interpretation of one of the modern statutes is often thought instructive in judicial construction of the other. See MCI Telecommunications Corp. v. FCC, 917 F.2d 30, 38 (D.C.Cir.1990); American Broadcasting Cos. v. FCC, 643 F.2d 818, 820-21 (D.C.Cir.1980); AT & T v. FCC, 487 F.2d at 873-74. In Maislin, a carrier had negotiated a rate with a shipper that was below the carrier's filed rate. When the carrier tried to collect the filed rate rather than the negotiated rate, the ICC, under its Negotiated Rate Policy, rejected the carrier's claim. The Supreme Court, however, disapproved the ICC's interpretation of the Act. "[B]y sanctioning adherence to unfiled rates," the Court said, the ICC had "undermine[d] the basic structure of the Act." Maislin, 497 U.S. at 132, 110 S.Ct. at 2769. The Court concluded that compliance with the filing requirements was " 'utterly central' to the administration of the Act," id. (quoting Regular Common Carrier Conference v. United States, 793 F.2d 376, 379 (D.C.Cir.1986)) and that the obligation to charge only filed rates had "always been considered essential to preventing price discrimination," id. at 126, 110 S.Ct. at 2761. Despite the harsh result for a shipper who had negotiated a lower rate, the Court thought the ICC must adhere to the "filed rate doctrine" that requires carriers to charge, and shippers to pay, only the rate filed with the ICC.