17 F.3d 1435
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 WHITE STAR LINES, INCORPORATED, a Maryland corporation,
Plaintiff-Appellant,
v.
SENATOR LINIE (USA), INCORPORATED, a California corporation,
Defendant-Appellee,
and
Southern Steamship Agency, Incorporated, a Maryland
corporation; Southern Steam, Incorporated, an
Alabama corporation, Defendants.
 No. 92-1553.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 6, 1993.
Decided Feb. 23, 1994.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Marvin J. Garbis, District Judge; Daniel E. Klein, Jr., Magistrate Judge. (CA-88-3603-MJG)
 Brian Lawrence Troiano, Thomas M. Auchincloss, Jr., Rea, Cross & Auchincloss, Washington, DC, J. Calvin Jenkins, Jr., Jenkins & Awalt, D. William Brooke, Towson, MD, for appellant.
 Marland Hamilton Whitman, Jr., Melissa A. Lengyel, Ober, Kaler, Grimes & Shriver, Baltimore, MD, for appellee.
 D.Md.
 REVERSED AND REMANDED.
 Before MURNAGHAN, WILKINSON, and WILLIAMS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 In this case, we must address the effect of language in a tariff rate filed with the Interstate Commerce Commission that leaves open the possibility of negotiation regarding that rate. Because we hold that the district court erred in relying upon such language, we reverse the judgment below and remand the case to the district court for further proceedings.
 
 I.
 
 2
 Defendant Senator Linie, USA, a worldwide shipping enterprise, needed a container yard in Baltimore, Maryland to serve as a terminal for the containers carried on its ships. Senator contracted with White Star Lines, Inc. to perform that service. In January 1988, the two companies signed the Container Yard Agreement ("CY Agreement") under which White Star provided container storage to Senator at a rate per container of $1.00 per day after five free days of storage.
 
 
 3
 The CY Agreement was short-lived, and on April 7, 1988, White Star provided thirty days notice of its desire to terminate the contract. In July 1988, White Star billed Senator for the container storage costs accrued while the agreement was in effect. However, instead of the billing rate specified in the CY Agreement, White Star billed Senator at the rate White Star had filed with the Interstate Commerce Commission. This rate, Item 910 in White Star's common carrier tariff filings, listed container storage costs at $50.00 per day after three free days. Senator refused to pay, and White Star sued.*
 
 
 4
 Defending against a motion to dismiss the claim for container storage costs, White Star relied on the "filed rate doctrine." This doctrine, White Star maintained, mandated that it bill Senator at the $50.00 rate filed with the ICC. The district court apparently agreed that White Star had to bill Senator according to tariff rates filed with the ICC. However, the district court noted that Item 910 actually stated that White Star's billing rate would be $50.00 "[u]nless otherwise negotiated in writing." Because the $1.00 rate was contained in a written agreement negotiated between White Star and Senator, the court held that the $1.00 rate did comply with the filed tariff. The court therefore dismissed White Star's claim for the $50.00 rate. White Star now appeals.
 
 II.
 
 5
 White Star contends that the district court erred in its application of the filed rate doctrine. It maintains that the filed rate doctrine is designed to eliminate price discrimination by prohibiting negotiations between private parties that result in charged rates below those filed with the ICC. White Star also argues that ICC filings must establish an actual tariff rate, not merely a general pricing policy. Because the "unless otherwise negotiated in writing" language of Item 910 does nothing to establish a pricing rate, White Star concludes that the district court erred in relying upon that aspect of Item 910.
 
 
 6
 The law comports with White Star's view. Giving effect to the "unless otherwise negotiated in writing" language in White Star's Item 910 would be inconsistent with clear precedent. In Maislin Industries, U.S., Inc. v. Primary Steel, Inc., 497 U.S. 116, 131 (1990), the Supreme Court rejected an attempt by the ICC itself to justify "deviation from the filed rate purely on the ground that the carrier and shipper have privately negotiated a lower rate" as"flatly inconsistent with the statutory scheme [of the Interstate Commerce Act] as a whole." Maislin plainly reflects a decision to prohibit the type of private rate negotiations the district court's decision here would allow. See Reiter v. Cooper, 113 S.Ct. 1213, 1216 (1993) (noting that Maislin held invalid a policy that would have violated the Interstate Commerce Act's "command ... that the carrier charge the filed rate"). Because the disputed language in Item 910 does nothing more than announce the possibility of such private negotiations, that language cannot be given effect. See Regular Common Carrier Conference v. United States, 793 F.2d 376, 380 (D.C.Cir.1986) (rejecting a rate that provided only " 'an offer to negotiate and agree with shippers' " regarding the rate to be charged) (quoting the dissent of ICC Chairman Taylor in the proceedings below). We therefore reverse the judgment of the district court. We leave for disposition on remand all issues that may remain in the case.
 
 REVERSED AND REMANDED
 
 
 *
 The suit between the parties encompassed a variety of other claims, but only the container overcharge issue is before this court